UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| OTIS FRESHWATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-2-TS |
| | ) | |
| NANETTE BRANKLE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Otis Freshwater, filed a Complaint under 42 U.S.C. § 1983 against several employees and officials of the Grant County Jail and Grant County Sheriff's Department. The Plaintiff alleges that he was denied adequate medical care and that the conditions of his confinement amounted to cruel and unusual punishment. On August 6, 2004, the Court allowed the Plaintiff to proceed against Defendant Nurse Nanette Brankle on his Eighth Amendment claims for denial of glasses and medical treatment and on his Eighth Amendment claim against Sheriff Oatess Archey for excessive noise. Pursuant to 28 U.S.C. § 1915A, the Court dismissed all other claims against the other Defendants. On September 27, 2005, the Court dismissed Sheriff Archey pursuant to the Plaintiff's motion and the Defendant's consent.

This matter is now before the Court on Defendant Brankle's Motion for Summary Judgment filed on June 30, 2005. The Plaintiff responded to the Motion on October 5, 2005, and filed an amended response on October 12 to clarify certain exhibits that were misnumbered. On October 31, the Defendant replied and moved to strike evidence submitted by the Plaintiff in response to the Defendant's Motion for Summary Judgment.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other

2

materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter*

*Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## STATEMENT OF FACTS

**A.   Motion to Strike**

The Defendant moves to strike certain materials submitted by the Plaintiff in opposition to the Defendant's Motion for Summary Judgment. In support of its Motion, the Defendant makes the following assertions:

1. Exhibits A, C, D, F, I, J, K, L, M, P, Q, S, U, and V are unauthenticated records.
2. Paragraphs 8, 9, 13, 15, 16, 20-23, 34, 36, 37, 39, 44, 50, 51, 63–68 of the Plaintiff's affidavit designated as exhibit T are based upon or contain inadmissible hearsay.
3. Paragraphs 2, 4, 27, 28, 30–32, 35, 40–42, 46, 47, 85 of the Plaintiff's affidavit designated as exhibit T contain legal argument and conclusions.
4. Paragraphs 8-12, 14–17, 19, 22–26, 29, 30, 33, 34, 36-39, 43, 44, 45, 48, 53, 54–62, 69–74 of the Plaintiff's affidavit contain either express or implied references to documents that are not attached to the affidavit.
5. Paragraphs 8–12, 14–17, 19, 22–26, 29, 30, 33, 34, 36–39, 43, 44, 45, 48, 53, 54–62, 69–74 of the Plaintiff's affidavit are not based upon his own personal knowledge.
6. The portion of the Plaintiff's brief entitled plaintiff's statement of disputed factual issues should be stricken.

4

7. The portion of the Plaintiff's brief entitled plaintiff's statement of materials facts should be stricken.

The documents that the Defendant moves to strike as unauthenticated include, among others, an incident report, medical care request form, hospital records, jail inspection report, inmate grievances, and the Plaintiff's deposition. The Defendant has not claimed that the documents are not what they purport to be and are not authentic but argues that because the Plaintiff has not authenticated these documents, they are inadmissible hearsay. Rather than strike the Plaintiff's submission on a technical ground that could easily be remedied under Federal Rule of Evidence 901, the Court will consider the Plaintiff's claims on the merits.

The Court also declines to consider each paragraph of the Plaintiff's affidavit challenged by the Defendant, but will evaluate the Plaintiff's statements in conjunction with its analysis of the facts of this case, discounting any statements that contain inadmissible hearsay, legal conclusions, or are not based on personal knowledge. *See* Fed. R. Civ. P. 56(e) (requiring that affidavits opposing summary judgment be made on personal knowledge, set forth such facts as would be admissible in evidence, show that the affiant is competent to testify to the matters stated in the affidavit, and set forth specific facts showing that there is a genuine issue for trial); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (stating that "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial").

The Court also denies the Defendant's request to strike the entirety of the Plaintiff's statement of facts and statement of issues. The Court will consider those statements that are supported by admissible evidence.

5

**B.     Claim for Denial of Prescription Eyewear**

The Plaintiff was a pretrial detainee at the Grant County Jail during the relevant time periods. On December 4, 2003, the Plaintiff was transported to the Marion Eye Center for a diabetic eye exam to be performed by Dr. Michael Scanameo. During his examination, the doctor wrote a recommendation for a magnification strength for reading glasses on a medical script. He also noted on a Comprehensive Eye Exam form the strength of glasses required. Dr. Scanameo also completed a medical information sheet, which included a reading "Rx" for the Plaintiff.

The Plaintiff told Nurse Brankle that the script Dr. Scanameo gave him was a prescription for eyeglasses. Nurse Brankle called Dr. Scanameo's office and the receptionist explained that the doctor wrote his recommendation for the magnification strength of over-the-counter reading glasses as a courtesy to the inmate. Nurse Brankle documented this conversation in an entry in the Plaintiff's chronological record of medical care.

The jail does not purchase prescription glasses for inmates. Inmates who need prescription glasses may be referred to a not for profit organization that will schedule eye exams and buy glasses for indigent inmates. Over-the-counter glasses are available to inmates for ten dollars through the medical commissary.

On December 5, 2003, the Plaintiff filed a grievance concerning the eyewear. Nurse Brankle responded on December 8 that the jail did not purchase eyewear for inmates. She indicated that his family would have to purchase the glasses and that she would send paperwork. However, before Nurse Brankle responded the Plaintiff filed another grievance on December 7 requesting a response to his first grievance. Nurse Brankle responded by stating that she already answered the Plaintiff's grievance. On December 11, the Plaintiff filed a grievance addressed to the Jail Commander stating

6

that Nurse Branke had not responded to his need for corrective eyewear. When he did not receive a response, the Plaintiff filed another grievance on December 17 stating his need for glasses to correct headaches, blurred vision, and watery and burning eyes. Again, the Plaintiff did not receive a response. On December 23, the Plaintiff filed a grievance with the Jail Director requesting him to check into the matter. This grievance went unanswered.

On January 8, 2004, the Plaintiff filed another grievance requesting prescription glasses due to headaches, blurred vision, and watery and burning eyes when reading. Nurse Brankle responded by informing the Plaintiff that he could purchase glasses through the medical commissary. On December 8, 2003, the Plaintiff had enough funds in his commissary account to purchase the glasses, as he did on several other occasions. The Plaintiff believes that the jail should have given him reading glasses without charge to him.

### B.   Claim for Denial of Care by Wound Care Specialist and Failure to Administer Foot Soak Treatments

On December 17, 2002, Dr. Gannon examined the Plaintiff at the Grant County Jail. He recommended Nizoral cream for a fungal infection on the Plaintiff's foot. He also ordered foot soaks as needed. Nurse Brankle did not administer foot soak treatments.

On December 25, 2002, the Plaintiff reported to jail officer Mark Foy that he had an open sore on his left foot. The Plaintiff was taken to jail processing and Nurse Brankle was contacted. Nurse Brankle instructed Corporal Beckett to transport the Plaintiff to Marion General Hospital.

At the hospital, Dr. Karuna Sharma saw the Plaintiff and diagnosed a "superficial diabetic ulcer" on the Plaintiff's left foot that was "maybe a couple of millimeters deep." The Plaintiff was given antibiotics, instructed to keep the sore clean and dry, and to follow-up with a wound care

7

specialist or get a referral from his primary care physician.

On January 3, 2003, the Plaintiff submitted a request for medical care and to see a wound care specialist. Nurse Brankle responded that she would re-check the Plaintiff's foot at sick call the next week. On January 8, the Plaintiff submitted a second request for an appointment with a wound care specialist. The Plaintiff wrote that his foot was healing, but was not yet completely healed and that seeing a wound care specialist was "probably the appropriate thing to do at this stage." (Brankle Aff., Ex. K.)

The following day, on January 9, nurse practitioner Terry Neal examined the Plaintiff at sick call. Nurse Neal indicated that the Plaintiff had finished the antibiotics and that his foot had healed. Nurse Neal wrote in the Plaintiff's chronological record of medical care that a wound care specialist was not required. Nurse Brankle was also present.

Nurse Practitioner Gene Brown from the Indiana Health Center, who was the Defendant's primary care physician for his diabetes, treated him after January 2003 for his diabetes and for sores on his left foot. Brown ordered bleach water foot soaks after seeing the Plaintiff on February 5, 2003. On March 4, Nurse Brankle contacted Brown, who indicated that the foot soaks were no longer needed. Brown again ordered bleach foot soaks and topical cream as a course of treatment after he saw the Plaintiff on May 7, 2003. Nurse Brankle did not provide any foot soak treatments.

## DISCUSSION

The Plaintiff alleges that the jail's failure to provide prescription eye glasses and failure to allow him to see a wound care specialist to treat an open sore on his foot amounted to deliberate indifference to his medical needs in violation of the Eighth Amendment. The Plaintiff also claims

that Nurse Brankle should have followed directives to give him foot soak treatments. The Defendant contends that summary judgment in her favor is appropriate because it was not unconstitutional to require the Plaintiff to purchase his own reading glasses and she was not deliberately indifferent to a serious medical need with respect to the Plaintiff's foot. The Defendant also submits that she is entitled to qualified immunity.

      Because the Plaintiff was a pre-trial detainee during the relevant time period of his Complaint, his claims arise under the Fourteenth Amendment. However, "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments" is the same. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of medical care cases, the test is whether the defendant was deliberately indifferent to the serious medical needs of a prisoner.

      To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512–13 (7th Cir. 2005). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S.

9

294, 297 (1991)). The plaintiff must proffer evidence "demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (citation omitted).

**A.      Eye Glasses**

The Plaintiff has not presented evidence that his vision problem was a serious medical need to which Nurse Brankle was deliberately indifferent.

In determining whether a deprivation of medical care amounts to deliberate indifference, the court considers such factors as "the severity of the medical problem, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Burns v. Head Jailor*, 576 F. Supp. 618, 620 (N.D. Ill.1984); *see also Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir.1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.") Here, none of these factors suggest a constitutional violation. The Plaintiff has not presented evidence that his vision problem was severe, that there was a potential for serious harm if he was not provided glasses, or that he actually suffered such harm because he did not receive glasses. *Cf. Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996) (plaintiff would fall and walk into objects without specially prescribed, tinted eye glasses that corrected severe double vision and loss of depth perception that resulted from head injury). Whether prison officials unreasonably deny or delay access to medical care is, in part, a function of the symptoms the inmate is exhibiting. *See Brownell v. Figel*, 950 F.2d 1285, 1291 (7th

10

Cir. 1991). The Plaintiff informed the Defendant that the glasses were needed to alleviate headaches, blurred vision, and watery and burning eyes when reading. However, there is no evidence that the Plaintiff had difficulty functioning without glasses. In fact, the seven grievances the Plaintiff filed to request glasses were all hand written, evidencing that the Plaintiff could function well enough to write. The Plaintiff's medical need was not "objectively serious." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (noting that for a prison official's failure to treat a serious medical need to amount to deliberate indifference, the need must be objectively serious).

The Plaintiff also fails to show that Nurse Brankle acted with deliberate indifference. When Nurse Brankle called Dr. Scanameo's office, she learned that the Plaintiff only needed over-the-counter reading glasses. The Plaintiff has not disputed that Nurse Brankle was provided, and believed, this information. Accordingly, the Plaintiff has not presented evidence that Nurse Brankle knew there was a substantial risk of serious harm to the Plaintiff if he did not immediately receive reading glasses. The evidence does not suggest that any such risk existed. Although the Plaintiff was likely frustrated by the lack of response to some of his grievances, none of the grievances suggested there was an increased risk to the Plaintiff if he was not provided reading glasses.

It certainly did not evidence deliberate indifference when the Defendant told the Plaintiff the jail did not provide prescription glasses and informed him that glasses were available for him to buy from the medical commissary. "Nothing in the Eighth Amendment, which prohibits certain punishment, requires a state to provide an inmate, free of charge, with a necessary commodity that would not be free outside the prison walls and which the inmate has the legal means to obtain." *Martin v. Debruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995). "The Eighth Amendment guarantees only that states will not ignore an inmate's serious medical needs; it does not guarantee free medical

11

care." *Id.* at 615 (holding that a prison official violates the Eighth Amendment by refusing to provide prescribed OTC medicine for a serious medical need only if the inmates lacks sufficient resources to pay for the medicine). Here, the Plaintiff had the necessary funds to purchase glasses. He simply argues that the jail should have taken care of the bill. In his response to the Defendant's Motion for Summary Judgment, he asserts that he required unequal strength lens glasses and there is "no proof" that the commissary sold such glasses. This argument is not only speculative, but it improperly places the burden of proof on the Defendant.

The Plaintiff cannot establish the elements that are essential to a claim of deliberate indifference. There are no genuine issues of material fact related to the Plaintiff's claim for eye glasses that preclude summary judgment in favor of the Defendant.

**B.     Foot Injury**

The Defendant contends that summary judgment is appropriate because the Defendant adequately treated the Plaintiff's foot. The Plaintiff contends that the Defendant ignored medical directives regarding the care of his foot when he was not allowed to see a wound care specialist and was not provided foot soaks.

It is well-settled that while incarcerated, an inmate is not entitled to the best possible care or to receive particular treatment of his choice. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Negligence, even gross negligence, is insufficient to establish deliberate indifference under the Eighth Amendment. *See Farmer*, 511 U.S. at 835; *Mathis v. Fairman*, 120 F.3d 88, 92 (7th Cir. 1997); *see also Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000) (medical malpractice and incompetence do not state a claim of deliberate indifference). The Plaintiff was "entitled to

12

reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

The uncontroverted evidence is that when the Plaintiff complained of a sore on his foot, Nurse Brankle ordered that he be transported to Marion General Hospital. Dr. Sharma prescribed antibiotics as a reasonable course of treatment.

The Plaintiff challenges the Defendant's follow-up treatment of his foot. However, the Plaintiff has not established that it was unreasonable, much less deliberately indifferent, for Nurse Brankle to wait until the next sick call to examine the Plaintiff and then rely on Nurse Neal's assessment that the foot was healing well and did not require the attention of a wound care specialist. The Plaintiff disagrees with Nurse Neal's assessment of his foot, which he describes as overriding Dr. Sharma's orders, but Nurse Neal is not a Defendant. Moreover, a mere disagreement with the course of an inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). In order for a prison official to be liable for a § 1983 violation the official must have been directly responsible for the occurrence of the alleged deprivation. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). The official must have had personal involvement or participation indicating a causal connection between the official's conduct and the alleged deprivation. *Id.* Nurse Neal's assessment, not Nurse Brankle's, resulted in the decision not to send the Plaintiff to a wound care specialist.

The only other action that the Plaintiff attributes to Nurse Brankle is that she did not soak his foot after it was ordered on December 17, 2002, or again after his primary care provider, Nurse Practitioner Gene Brown, ordered it as a course of treatment in February and May 2003. The Plaintiff contends that this failure resulted in his foot becoming infected. The Defendant's response to this allegation is that because the Court's screening order indicated that the Plaintiff could

13

proceed on his claim for denial of treatment by a wound care specialist, assertions concerning foot soak treatments are not relevant.

The Plaintiff was not required in his Complaint to detail every fact in support of his deliberate indifference claim. The Court's order allowed the Plaintiff to proceed on his Eighth Amendment claim against Nurse Brankle. The Order was not intended to limit the Plaintiff's claims to the extent argued by the Defendant and the Court will consider whether a triable issue of fact precludes summary judgment on the Plaintiff's claim that Nurse Brankle violated the Eighth Amendment when she did not give him foot soaks.

The Defendant does not present any evidence regarding the soak treatments, their necessity, the risk of harm if they were not provided, Nurse Brankle's reasons for not providing the soaks, or any other matter touching on the specific allegation regarding foot soak treatments. But the evidence most favorable to the Plaintiff does not create a genuine issue of material fact as to whether Nurse Brankle acted with the requisite culpable state of mind. "[N]egligence or even gross negligence is not enough; rather [the Plaintiff] must show *actual intent* or *deliberate indifference* on the part of state actors in order to make out an eighth amendment claim." *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *James v. Milwaukee Co.*, 956 F.2d 696, 699 (7th Cir. 1992) (emphasis in original)). The following course of events do not demonstrate deliberate indifference to a serious medical need.

On December 17, foot treatments were only ordered as needed. The Plaintiff did not submit any requests for foot soak treatments. When he did complain about his foot on December 25, he was taken to the hospital and prescribed antibiotics and told to keep the foot dry and clean. An inter-office memo from Nurse Brankle to the Plaintiff, dated December 30, 2002, indicates that he could

14

resume his custodial duties as long as he kept his left foot from getting wet. On January 9, Nurse Practitioner Neal determined, after the Plaintiff had completed his antibiotics, that the Plaintiff's superficial ulcer was healed to the extent he had no open wounds, that a wound care specialist was not needed, and the Plaintiff should continue use of the antifungal cream.

There is no mention of the Plaintiff's foot again until the Plaintiff's prescheduled diabetic exam on February 5, 2003. Nurse Practitioner Brown prescribed topical cream and bleach water soak for the Plaintiff's foot. On March 4, 2003, Nurse Brankle spoke to Brown, who indicated that the Plaintiff could stop the bleach soaks. Brown saw the Plaintiff again on May 7 and again ordered topical cream and bleach soaks. The Plaintiff does not indicate that there were any further problems with his foot.

In addition, despite filing over thirty grievances, some of which were related to the wound care specialist and the need to reorder topical cream for his foot, at no time did the Plaintiff file a grievance requesting foot soak treatments. Nurse Brankle reordered the cream when the Plaintiff requested and he had regularly scheduled appointments with Nurse Practitioner Brown. The Plaintiff has failed to demonstrated that this was not a reasonable course of treatment given his condition. There is no evidence that the symptoms the Plaintiff was experiencing were severe or that the Plaintiff's condition worsened as a result of not receiving the soak treatments, such that Nurse Brankle should have known that the Plaintiff faced a substantial risk of serious harm if the foot soaks were not provided. No reasonable jury could find that the Defendant violated the Plaintiff's constitutional rights when she did not provide foot soaks for the Plaintiff.

**C.    Qualified Immunity**

Because there is no genuine dispute as to whether the Defendant violated the Plaintiff's Eighth Amendment rights, the Court need not address whether qualified immunity applies.

## CONCLUSION

For the foregoing reasons, Defendant Nurse Brankles's Motion for Summary Judgment [DE 133] is GRANTED. Judgment will be entered in favor of Defendant Brankle and against Plaintiff Freshwater. The Defendant's Motion to Strike [DE 183] is DENIED.

SO ORDERED on November 28, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT